Filed 11/20/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br> v. <br> DOMINIC DANIEL, <br><br>     Defendant and Appellant. | A157422 <br><br> (Alameda County <br> Super. Ct. No. 171810) |

In 2015, a jury convicted defendant Dominic Daniel of second degree murder in the death of his girlfriend, Tsega Tsegay, and he was sentenced to 15 years to life in prison. This court affirmed his conviction in a nonpublished opinion. (*People v. Daniel* (Aug. 4, 2017, A145854).) In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437), which altered liability for murder under the theories of felony murder and natural and probable consequences. The bill also established a procedure, under newly enacted Penal Code[1] section 1170.95, for eligible defendants to petition for resentencing.

Daniel filed a petition for relief under section 1170.95 alleging that he was convicted of murder under the natural and probable consequences doctrine or the felony murder doctrine and could no longer be convicted of murder because of Senate Bill No. 1437's changes to the law. The trial court summarily denied the petition on the basis that Daniel failed to make a

---

[1] All further statutory references are to the Penal Code.

prima facie showing of entitlement to relief, reasoning that the jury was not instructed on either theory of liability and the record showed he was the actual killer.

On appeal, Daniel contends that the order denying the petition must be reversed because the judge who ruled on the petition failed to appoint him counsel and was not the sentencing judge. Although we agree that section 1170.95 was violated in both of these ways, we conclude that the errors were harmless. We hold that a trial court's failure to appoint counsel after a petitioner files a facially sufficient petition for relief is not prejudicial error when records in the court's own file—in this case the jury instructions—demonstrate that the petitioner is ineligible for relief as a matter of law. We also hold that prejudicial error is not established simply because a judge other than the sentencing judge considers the defendant's petition. Thus, we affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

Tsegay was killed in 2012, and three years later Daniel was tried and convicted of second degree murder. The jury was not instructed on either felony murder or murder under the natural and probable consequences doctrine. Nevertheless, in April 2019, Daniel filed a petition for resentencing under section 1170.95. Using a preprinted form, he checked boxes stating that a charging document was filed against him allowing the prosecution to proceed under a theory of felony murder or the natural and probable consequences doctrine; he was convicted at trial of first or second degree murder under a theory of felony murder or murder under the natural and probable consequences doctrine; and he could not now be convicted of murder in light of Senate Bill No. 1437's changes to the law. In addition, he checked

2

a box indicating that he was convicted of second degree felony murder or second degree murder on a natural and probable consequences theory. Finally, he checked a box stating, "I request that this court appoint counsel for me during this re-sentencing process." He did not submit any materials from the record of conviction.

Later that month, Judge Morris Jacobson, who had not sentenced Daniel, summarily denied the petition. Daniel did not appear, and counsel was not appointed to represent him. Relying on this court's opinion in Daniel's direct appeal, the trial court determined that relief under section 1170.95 was "unavailable as [Daniel] was the actual killer." Also, since a "review of the instructions provided to the jury reveal[ed] an absence of any instructions regarding felony-murder or natural and probable consequences theories of murder," the court concluded that Daniel "was convicted on a valid theory of murder which survives the changes to . . . sections 188 and 189 made by [Senate Bill No.] 1437."

In June 2019, Daniel appealed from the order denying the petition. His appellate counsel asked this court to conduct an independent review of the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436. In February 2020, after Daniel submitted a brief on his own behalf raising various issues, we asked his counsel to brief "whether the trial court erred by denying appellant's resentencing petition, on the basis of materials outside the petition itself, without first appointing an attorney to represent appellant as he requested." Over six months later, after the opening brief and respondent's brief were filed, we granted Daniel's request to file a supplemental opening brief on the issue whether reversal is required because a different judge than the sentencing judge decided the petition, and briefing was completed in September 2020.

3

## II.
### DISCUSSION

*A.     General Legal Standards*

"Effective January 1, 2019, Senate Bill [No.] 1437 amended murder liability under the felony-murder and natural and probable consequences theories.  The bill redefined malice under section 188 to require that the principal acted with malice aforethought.  Now, '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.'  (§ 188, subd. (a)(3).)" (*People v. Turner* (2020) 45 Cal.App.5th 428, 433.)  The bill also amended section 189 to provide that a defendant who was not the actual killer and did not have an intent to kill is not liable for felony murder unless he or she "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2," or the victim was a peace officer performing his or her duties. (§ 189, subds. (e) & (f).)

Senate Bill No. 1437 also enacted section 1170.95, which authorizes "[a] person convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts." (§ 1170.95, subd. (a).)  As we recently explained, "[t]he defendant initiates the process by filing a petition in the sentencing court that must include three pieces of information.  (§ 1170.95, subd. (b).)  First, the petition must include '[a] declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a).'  (§ 1170.95, subd. (b)(1)(A).)  Those requirements are (1) '[a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences

4

doctrine'; (2) '[t]he petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder'; and (3) '[t]he petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' (§ 1170.95, subd. (a).)  Second, the petition must include '[t]he superior court case number and year of the petitioner's conviction.'  (§ 1170.95, subd. (b)(1)(B).)  And finally, the petition must state '[w]hether the petitioner requests the appointment of counsel.'  (§ 1170.95, subd. (b)(1)(C).)"  (*People v. Cooper* (2020) 54 Cal.App.5th 106, 114, review granted Nov. 10, 2020, S264684 (*Cooper*).)  "If a petition is missing any of these three pieces of information and the missing information 'cannot be readily ascertained by the [trial] court, the court may deny the petition without prejudice' to filing another petition that includes the required information.  (§ 1170.95, subd. (b)(2).)"  (*Ibid.*)

"Section 1170.95[, subdivision (c),] addresses the procedure by which a trial court determines whether the petitioner is entitled to an evidentiary hearing.  The subdivision provides in full:  'The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor['s] response is served.  These deadlines shall be extended for good cause.  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause.' "  (*Cooper*, *supra*, 54 Cal.App.5th at pp. 114–115.)

*B.      The Failure to Appoint Counsel for Daniel Was Harmless.*

Daniel claims that the trial court erred by summarily denying his petition under section 1170.95 without first appointing counsel to assist him. Although we agree, we conclude the error was harmless because the record shows that Daniel is ineligible for relief as a matter of law.

Earlier this year, our state Supreme Court granted review to decide when the right to counsel arises under section 1170, subdivision (c) (section 1170.95(c)).  (*People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted Mar. 18, 2020, S260598 (*Lewis*).)  In *Cooper*, we broke with other Courts of Appeal and held that "the right to counsel attaches upon the filing of a facially sufficient petition that alleges entitlement to relief"—that is, a petition that includes all the information required under section 1170.95, subdivision (b).  (*Cooper*, *supra*, 54 Cal.App.5th at pp. 109, 114.)  Other decisions "interpreted section 1170.95(c) to require 'two prima facie showings':  first, under the first sentence of [section 1170.95(c)], 'that the petitioner falls within the provisions of this section,' and second, under the last sentence of the provision, that the petitioner is 'entitled to relief.' "  (*Id.* at pp. 116–117.)  These decisions determined that a petitioner has a right to counsel during only the second prima facie review.  (*Id.* at p. 117.)

We reached a different conclusion, explaining that, in our view, section 1170.95(c)'s first sentence is "a topic sentence summarizing the trial court's task before issuing an order to show cause, and the following sentences . . . specify the procedure in undertaking that task," meaning there is only one prima facie review before an order to show cause issues.  (*Cooper*, *supra*, 54 Cal.App.5th at p. 118.)  Thus, once a petitioner files a facially sufficient petition requesting counsel, the trial court must appoint counsel

6

before performing any review under section 1170.95(c). (See *Cooper*, at p. 123.)

The Attorney General filed the respondent's brief before we issued *Cooper*. In addressing the right-to-counsel issue, the Attorney General relies on the reasoning of *Lewis* and other decisions discerning a two-part review process under section 1170.95(c), as well as the statute's legislative history. For the reasons given in *Cooper*, however, we disagree with this analysis, and we adhere to our holding in *Cooper* pending the Supreme Court's decision in *Lewis*. Here, it is undisputed that Daniel filed a facially sufficient petition that complied with the requirements of section 1170.95, subdivision (b).[2] As a result, the trial court erred by failing to appoint counsel for Daniel before denying the petition based on his failure to make a prima facie showing of entitlement to relief.

We therefore turn to whether this error requires reversal. Daniel claims that it does. He argues that "the deprivation of his right to counsel is a structural error," requiring reversal without regard to prejudice. We disagree.

" '[T]he total deprivation of the right to counsel at trial' " is structural error under both the federal and state Constitutions. (*People v. Lightsey* (2012) 54 Cal.4th 668, 699 (*Lightsey*), quoting *Arizona v. Fulminante* (1991) 499 U.S. 279, 309.) We "presume[] a violation of the right to counsel had a prejudicial effect on the trial 'where assistance of counsel has been denied entirely or during a critical stage of the proceeding. When [there has been such a denial], the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary.' " (*Lightsey*, at pp. 699–700, quoting

---

[2] Daniel incorrectly identified the date of his conviction as 2012, the year he committed the crime, but this discrepancy did not affect the trial court's decision.

7

*Mickens v. Taylor* (2002) 535 U.S. 162, 166.) Even if the right to counsel arises under a California statute, its denial may be " 'analogous to' [the] structural error" of the total deprivation of counsel at trial if it " 'operate[s] to deny a criminal defendant the constitutionally required "orderly legal procedure." ' " (*Lightsey*, at p. 699.) "Whether a violation of state law or federal constitutional law, structural error results in per se reversal." (*People v. Gonzalez* (2018) 5 Cal.5th 186, 196; e.g., *Lightsey*, at pp. 700–701 [deprivation of right to counsel under section 1368 during competency proceedings].)

Daniel argues that these principles apply to a proceeding under section 1170.95, which he characterizes as a "critical stage" of a case since it "addresses [a] defendant's right to resentencing." A "critical stage" is "a step of a criminal proceeding . . . that [holds] significant consequences for the accused." (*Bell v. Cone* (2002) 535 U.S. 685, 696.) "Sentencing is a critical stage in the criminal process within the meaning of the Sixth Amendment," and "[a] defendant is entitled under state and federal law to the assistance of counsel when a sentence is vacated on appeal and remanded for a new sentencing hearing." (*People v. Rouse* (2016) 245 Cal.App.4th 292, 297.) On the other hand, legislation "intended to give inmates serving otherwise final sentences the benefit of ameliorative changes to applicable sentencing laws," including Senate Bill No. 1437, does not implicate the Sixth Amendment. (*People v. Perez* (2018) 4 Cal.5th 1055, 1063–1064; *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156.)

Even though "neither the federal nor the state Constitution mandates an unconditional right to counsel to pursue a collateral attack on a judgment of conviction," California decisions recognize that " 'if a postconviction petition by an incarcerated defendant "attacking the validity of a judgment

8

states a prima facie case leading to [the] issuance of an order to show cause, the appointment of counsel is demanded by due process concerns." ' " (*People v. Fryhaat* (2019) 35 Cal.App.5th 969, 980–981 [hearing on motion under section 1473.7 to vacate conviction]; *People v. Rouse*, *supra*, 245 Cal.App.4th at pp. 298–300 [resentencing hearing under Proposition 47].) "That right is a limited one, however, and only kicks in once the defendant makes a prima facie showing of entitlement [to] postconviction relief." (*People v. Cole* (2020) 52 Cal.App.5th 1023, 1032, review granted Oct. 14, 2020, S264278.)

At best, these authorities support an argument that structural error may occur when, *after* an order to show cause issues, a defendant is denied counsel at a hearing under section 1170.95, subdivision (d). Here, however, the petition was denied before any such order was issued. Though under *Cooper* Daniel had a statutory right to counsel upon filing a facially sufficient petition, the violation of that right was not a structural error—and thus not reversible per se—because it was not " 'analogous to' . . . 'the total deprivation of the right to counsel at trial.' " (*Lightsey*, *supra*, 54 Cal.4th at p. 699; see *People v. Shiga* (2016) 6 Cal.App.5th 22, 45.) Rather, the failure to appoint counsel upon the filing of a facially sufficient petition under section 1170.95 *is* susceptible to review for prejudice. (Cf. *Lightsey*, at p. 699.) And harmlessness is established if the record "conclusively demonstrate[s] that [the petitioner] was ineligible for relief as a matter of law." (*Cooper*, *supra*, 54 Cal.App.5th at p. 123.)

In *Cooper*, we did not decide whether the federal or state constitutional standard for assessing prejudice applies. (See *Cooper*, *supra*, 54 Cal.App.5th at p. 123.) Now being satisfied that a petitioner's right to counsel under section 1170.95(c) is not protected by the federal Constitution, we hold that a

9

defendant like Daniel whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing." (*Cooper*, at p. 123, citing *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*); see, e.g., *People v. Hill* (2013) 219 Cal.App.4th 646, 652.)

To determine whether Daniel met this burden, we first address his claim that the trial court improperly relied on materials outside the petition to deny it. Daniel originally raised this claim in the context of arguing that the court substantively erred under section 1170.95(c), but he reiterates it in arguing that the error in not appointing counsel was prejudicial even if it is not reversible per se. We conclude that the court properly relied on the jury instructions given at Daniel's trial to determine he was not entitled to relief.[3]

The issue whether a trial court may consider the record of conviction in determining if the petitioner has made a prima facie showing of entitlement to relief under section 1170.95(c) is also pending before the Supreme Court in *Lewis*. Analogizing the section 1170.95 procedure to other forms of postconviction relief, *Lewis* held that a trial court can "consider its file and the record of conviction," including the prior opinion in a petitioner's direct appeal. (*Lewis*, *supra*, 43 Cal.App.5th at pp. 1137–1138.) Division Three of this court then applied *Lewis* to approve a trial court's consideration of jury instructions. (*People v. Edwards* (2020) 48 Cal.App.5th 666, 674, review granted Jul. 8, 2020, S262481 (*Edwards*).) *Edwards* held that the trial court had properly reviewed "the readily available record of conviction (charging information and jury instructions)" to summarily deny a section 1170.95

_____

[3] Daniel also challenges the trial court's reliance on the facts from our prior opinion. Rather than resolving this issue, we will not consider those facts in evaluating the prejudicial effect of the errors at issue.

10

petition on the basis that the petitioner "was not charged or convicted of second degree felony murder or murder under the natural [and] probable consequences doctrine directed at accomplice liability." (*Edwards*, at p. 674.) As a subsequent decision explained, "[t]he jury instructions given at a petitioner's trial may provide 'readily ascertainable facts from the record' that refute the petitioner's showing," permitting a trial court to determine that a petitioner is not entitled to relief without engaging in " 'factfinding involving the weighing of evidence or the exercise of discretion,' " which must wait until after an order to show cause issues. (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, review granted Sept. 23, 2020, S263939 (*Soto*).)

In his opening brief, Daniel argues that the text and legislative history of section 1170.95 "demonstrate that the prima facie showing that [a] petitioner falls within the provisions of the section is to be based on the petition alone." (Emphasis omitted.) He filed the brief before we issued *Cooper*, however, and his argument fails to account for *Cooper*'s holding that, instead of there being two prima facie reviews, there is one review to determine whether a petition is facially valid and a subsequent review to determine whether the petitioner has made a prima facie showing of entitlement to relief. (See *Cooper*, *supra*, 54 Cal.App.5th at pp. 116–117.) Similarly, his argument in his reply brief about the statutory text and legislative history is primarily to support his claim that, consistent with *Cooper*, a trial court cannot "engage in an initial substantive review before appointing counsel." While we agree with Daniel that a trial court may not rely on the record of conviction to deny a facially sufficient petition, he offers no reason why a court would be prohibited from relying on the record of conviction to deny a petition *after* deeming it facially sufficient, appointing counsel, and receiving briefing from the parties.

11

Accordingly, consistent with *Edwards* and *Soto*, we conclude it is appropriate to consult the jury instructions in determining whether the trial court's failure to appoint counsel for Daniel before denying the petition was prejudicial. The given instructions demonstrate that Daniel was convicted of second degree murder on a theory that survives Senate Bill No. 1437's changes to sections 188 and 189. (See § 1170.95, subd. (a)(3).) The only instruction given on the elements of murder was CALCRIM No. 520. Although the jury was instructed on some lesser included offenses of murder, including voluntary manslaughter, no instructions were given on felony murder or murder under the natural and probable consequences doctrine.[4] Thus, Daniel is not "[a] person convicted of felony murder or murder under a natural and probable consequences theory," and he is therefore ineligible for relief as a matter of law. (§ 1170.95, subd. (a); see *Edwards*, *supra*, 48 Cal.App.5th at p. 674 [absence of jury instructions on felony murder or natural and probable consequences doctrine justified summary denial of petition].)

Daniel does not contest that the jury instructions establish he was convicted under a valid theory of murder. Instead, he claims he was prejudiced because he was "effectively denied the opportunity to develop the record on his entitlement to resentencing." True enough, in some instances the failure to appoint counsel before summarily denying a section 1170.95

---

[4] In defining implied malice, CALCRIM No. 520 mentions the concept of the "natural and probable consequences" of a defendant's *own* act. The natural and probable consequences doctrine abolished by Senate Bill No. 1437, however, is a theory of vicarious liability under which "[a]n aider and abettor is guilty not only of the intended, or target, crime but also of any other crime a principal in the target crime actually commits (the nontarget crime) that is a natural and probable consequence of the target crime." (*People v. Smith* (2014) 60 Cal.4th 603, 611; *People v. Chiu* (2014) 59 Cal.4th 155, 164.)

12

petition may be "prejudicial because it prevented [the petitioner] from further developing the record to demonstrate potential entitlement to relief." (*Cooper, supra*, 54 Cal.App.5th at pp. 125–126.) When a petitioner is, unlike Daniel, not categorically ineligible for relief, it is possible that further facts could be developed to show that he or she was in fact convicted under a now-invalid theory of murder. In *Cooper*, for example, we concluded that where the petitioner entered a plea to second degree murder and the limited record suggested another man participated in the killing, the denial of counsel was prejudicial because further facts might be developed to show that the petitioner was not the actual killer, did not act with the intent to kill, and was not otherwise ineligible for relief under section 1170.95. (*Cooper*, at pp. 125–126.)

Here, however, Daniel has not carried his burden to demonstrate a reasonable probability that "his petition would not have been summarily denied without an evidentiary hearing" had the trial court appointed counsel for him. (*Cooper, supra*, 54 Cal.App.5th at p. 123.) He posits that at trial "he may have had no incentive to try to present evidence that he was not the actual killer if it would have identified him as an aider and abettor, or supported an argument that he could be found guilty under a natural and probable consequences theory, since it would not have been likely to result in his acquittal under the law at that time," whereas now he "could present new evidence to support his petition, including evidence that would support a claim he could not be convicted under the law in effect now, which might include information from counsel about different tactical decisions in presenting the case that might have been made were it tried under the current law." We cannot agree that section 1170.95 authorizes a defendant to present new evidence to undermine a jury's finding of guilt under a particular

13

theory of murder, effectively retrying the case. In other words, even if Daniel could conceivably muster some evidence that he did not act alone in killing Tsegay and intentionally participated in only a lesser felony, that evidence would not require an order to show cause in light of the jury's determination that he was directly, not vicariously, liable for her murder. As a result, the trial court's denial of the petition before appointing counsel was harmless under *Watson*.

C.     *The Petition's Denial by a Judge Other than the Sentencing Judge Was Also Harmless.*

Daniel claims that reversal is also required because Judge Jacobson, who was not the sentencing judge, ruled on the petition. Although the record on appeal does not demonstrate that the original judge was unavailable, we conclude that any error was harmless.

Section 1170.95, subdivision (b)(1), directs that a petition for resentencing "shall be filed with the court that sentenced the petitioner. . . . If the judge that originally sentenced the petitioner is not available to resentence the petitioner, the presiding judge shall designate another judge to rule on the petition." Recently, the Second District Court of Appeal held that this provision requires "the individual public official" who sentenced the petitioner to rule on the petition unless the record shows the presiding justice of the superior court determined that person was "not available" to do so. (*People v. Santos* (2020) 53 Cal.App.5th 467, 474 (*Santos*).)

The Attorney General does not claim that *Santos* was wrongly decided. He also concedes that the record before us contains no evidence that Judge Thomas Reardon, "the original sentencing judge[,] was unavailable to rule on

14

the section 1170.95 petition."[5] Instead, the Attorney General argues that any error was harmless because Daniel is ineligible for relief as a matter of law.

*Santos* had no occasion to assess the prejudice stemming from a petition's assessment by a different judge, because remand was required regardless based on a separate error in the denial of the defendant's petition. (*Santos*, *supra*, 53 Cal.App.5th at p. 472.) The Court of Appeal did note that "[a]lthough both the petitioner and the prosecution are permitted to present additional evidence beyond that introduced at the time of conviction, a judge who is familiar with the facts, evidence, and law already part of the record is better equipped to rule on a petition than a different judge, unfamiliar with the case, who is reviewing a cold record." (*Id.* at p. 474.) Although Daniel generally asserts that "the decision of the petition by the wrong judge . . . [was] prejudicial" (emphasis omitted), he does not identify any possible prejudice resulting from Judge Jacobson's unfamiliarity with his case. Since, as discussed above, the jury instructions decisively establish that Daniel is ineligible for relief under section 1170.95 because he was convicted under a still-valid theory of murder, we conclude that the petition's decision by Judge Jacobson instead of by Judge Reardon was harmless.

III.
DISPOSITION

The April 30, 2019 order denying Daniel's petition for relief is affirmed.

---

[5] Sometimes, the judge who originally sentenced a petitioner will not be available to rule on a petition because he or she is no longer on the bench, but Judge Reardon is still an active judge.

15

_____

Humes, P.J.

WE CONCUR:


_____

Margulies, J.



_____

Banke, J.

*People v. Daniel*  A157422

16

Trial Court:

Superior Court of the County of Alameda

Trial Judge:

Hon. Morris Jacobson

Counsel for Defendant and Appellant:

Jeffrey A. Glick, under appointment by the Court of Appeal

Counsel for Plaintiff and Respondent:

Xavier Becerra, Attorney General

Lance E. Winters, Chief Assistant Attorney General

Jeffrey M. Laurence, Senior Assistant Attorney General

Seth K. Schalit, Supervising Deputy Attorney General

Lisa Ashley Ott, Deputy Attorney General

*People v. Daniel*  A157422